ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 AUG 12 PM 2: 08

CLERK L. Illbriden
S.D. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JOHN F. WILLIAMS, JR.,          )
                                )
        Plaintiff,              )
                                )
    v.                          )    CV 304-039
                                )
JO ANNE B. BARNHART,            )
Commissioner of Social Security,)
                                )
        Defendant.              )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

John F. Williams, Jr. ("Plaintiff") appeals the decision of the Commissioner of Social

Security ("Commissioner") denying his application Disability Insurance Benefits ("DIB")

under the Social Security Act. Upon consideration of the briefs submitted by both parties,

the record evidence, and the relevant statutory and case law, the Court **REPORTS** and

**RECOMMENDS** that the Commissioner's final decision be **AFFIRMED,** that this civil

action be **CLOSED,** and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based on claims of disability dating back to September 12, 1995, Plaintiff initially

applied for DIB on October 16, 1996; this application was denied upon initial determination

on January 17, 1997. Tr. ("R"), pp. 35-38, 61-64. Plaintiff did not seek further

administrative review, instead filing his current application for DIB more than five years

later, on February 4, 2002. R. 65-67. Plaintiff alleges disability due to arthritis, manic

depression, esophageal reflux disease, blurred vision, dizziness, chest pain, headache, and decreased mental capabilities. R. 65, 101. The Social Security Administration denied Plaintiff's application and his request for reconsideration. R. 39-41, 45-48, 321-350. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was conducted on November 13, 2002, in which Plaintiff was represented by counsel and testified on his own behalf, and the ALJ issued an unfavorable decision dated June 17, 2003. R.17-23, 453-481. The Appeals Council ("AC") then declined review, making the ALJ's opinion the Commissioner's final decision. R. 6-9

Applying the five step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's osteoarthritis and gastroesophageal reflux disease constitute "severe" impairments based on the requirement in the Regulations (20 CFR § 404.1520(b)).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant has the residual functional capacity for medium exertional level work. The claimant's past relevant work as a machine operator in a chalk mine, as described by Plaintiff, did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565).

R. 25-26. Because the ALJ determined that Plaintiff could perform his past relevant work, the sequential evaluation process stopped, see 20 C.F.R. § 404.1520(a)(4)(iv), and the ALJ concluded that Plaintiff "was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f)." Id.

2

Having exhausted his administrative remedies, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of that adverse decision. Plaintiff now argues that the ALJ erred by: 1) failing to find his mental impairments were "severe," and 2) "in using [Plaintiff's] minimal activities of daily living to substantiate a finding of not-disabled." Pl.'s Br., pp. 11-16.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d

at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

**A.      The ALJ Properly Evaluated Plaintiff's Complaints of Mental Impairment.**

### 1.      Defining "Severe" Impairment

First, Plaintiff argues that the ALJ erred by not finding that Plaintiff's mental illness constituted a "severe" impairment. To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a)("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work

4

activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that his mental illness significantly affects his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986): Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)(*per curiam*). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*). With these basic principles in mind, the Court turns to Plaintiff's argument.

### 2. The Evidence at Issue

According to Plaintiff, "[a]lthough there is little medical evidence for [the] time period in question, there is evidence pertaining to the period prior, and the period after, which, when taken together, confirm on-going, unabated mental illness since 1995." Pl.'s Br., p. 11. Plaintiff further argues that the ALJ, in failing to consider this "before-and-after" evidence, did not account for Plaintiff's "longitudinal medical history." Id. Specifically, Plaintiff argues that psychological testing performed in 1995 (*i.e.*, a "Global Assessment of Functioning" score of 50) demonstrates that Plaintiff's depression and other psychological problems constituted "severe vocational limitations" at that time, and that this evidence is

6

indicative of Plaintiff's condition throughout the relevant period. Id. at 3-4, 11 (citing R. 146-48, 150).

The medical evidence pertaining to Plaintiff's mental condition is perhaps worthy of summary. In September and October of 1995, Plaintiff was hospitalized for psychiatric treatment. R. 145-150, 163-66. Prior to this hospitalization, Plaintiff reported feeling angry and depressed, dreaming about killing his ex-wife and his boss, and attempting to choke his girlfriend. R. 145. Upon his discharge he was "free to return to work on October 23, 1995 with activity and diet as tolerated." R. 150. However, as Plaintiff points out, his "Global Assessment of Functioning" ("GAF") score upon discharge was only 50, a score consistent with moderate to severe symptoms and moderate to severe impairment in social functioning. Pl.'s Br., pp. 3-4 (citing R. 148); see also "Global Assessment of Functioning (GAF) Scale" (attached to Pl.'s Br. at p. 18).

On December 31, 1996, Dr. Marvin Long, a clinical psychologist, performed a consultative examination and concluded that Plaintiff suffered from depression, a learning disability, and alcohol abuse. R. 231, 234. However, Dr. Long also opined that Plaintiff was "exaggerating [his] situation and condition." R. 233. In sum, Dr. Long concluded that it would be unlikely that Plaintiff would return to a work setting because "[Plaintiff] is currently receiving his medical disability" from his former employer. R. 234.

In addition, on January 14, 1996, Dr. Cal Vanderplate, a non-examining Agency consulting psychologist, completed a "Psychiatric Review Technique Form" and opined that

7

Plaintiff had severe mental impairments due to depression and substance abuse[1] and that a residual functional capacity assessment was necessary. R. 171-179. In September 1996, Plaintiff's treating psychiatrist, Dr. Patrice Webster, noted that Plaintiff was suffering from depression and other psychological problems which gave him "significant difficulty functioning" and consequently rendered him "unable to work." R. 216. In October of 1996, Dr. Webster wrote a letter stating that she "would support [Plaintiff's] request for Social Security Disability."[2] R. 215.

Next, on January 14, 1997, Dr. VanderPlate completed a residual functional capacity assessment, this time opining that although Plaintiff had "moderate limitations" affecting his ability to interact with the public, accept instruction, get along with co-workers, and "complete a normal workday and workweek," Plaintiff should be able to return to work. R. 236-38. Unfortunately, after the date of Dr. VanderPlate's assessment, there is very little in the record indicating Plaintiff's psychological treatment or condition. Indeed, from the date that Plaintiff's initial application for DIB was denied in January 1997, Plaintiff apparently sought *no* medical or psychiatric care of any kind until October 2001.

---

[1]Although never fully admitted by Plaintiff, it is clear that he has a longstanding problem with substance abuse. For example, in June 1996, Plaintiff was hospitalized after being shot by his girlfriend--while in the hospital he tested positive for cocaine and marijuana. R. 213. At this time Plaintiff also admitted to "excessive" use of alcohol on the weekends. R. 208. On December 31, 1996, during a psychological evaluation, Plaintiff admitted to "heavy alcohol and some drug use over the years" and that he "continue[d] to drink beer on [a] regular basis." R. 234. More recently, although denying continued drug use, in March and June of 2002 Plaintiff admitted to his doctors that he drank a six-pack of beer every afternoon beginning at 1:00 p.m. R. 292, 303, 375, 397.

[2]It should perhaps also be noted that Dr. Webster's treatment notes reveal that Plaintiff missed more appointments than he made. R. 217-227.

8

That having been noted, Plaintiff complained of depression and nightmares between October 2001 and January 2002, but there is little documentation from this period which is indicative of Plaintiff's mental health. R. 263-265. On October 15, 2001, Plaintiff saw Clarence Dupkoski, a physician's assistant, and complained of violent nightmares and difficulty sleeping. R. 265. At this time it was noted that Plaintiff had "no history of combat duty or traumatic events;" nevertheless, a mental health consultation was planned. Id. On November 17, 2001, Plaintiff received a mental health consultation, and it was determined that Plaintiff had "anxiety with persistent violent nightmares" which had resulted in insomnia. R. 264. Plaintiff was given a GAF score of 55, consistent with moderate symptoms and some difficulty in social functioning, and paxil and clonidine were prescribed. Id. However, it was also noted that although Plaintiff seemed tense, his judgment, insight, intellect, and memory were intact; he also seemed alert, well-oriented, and with normal affect. Id.

On December 17, 2001, Plaintiff was seen for a follow-up appointment. Id. During this appointment, Plaintiff admitted that he had stopped taking the paxil and clonidine after only two weeks, but also reported that he was experiencing "less nightmares." Id. Anxiety and insomnia remained problems and Plaintiff had a "flat affect," but Plaintiff was also noted to be "pleasant and cooperative," and his "thought processes [were] intact, relevant, and coherent." Id. Plaintiff's GAF score remained 55. Id.

After the expiration of his insured status, Plaintiff was seen for another mental health visit on January 15, 2002. R. 263. Plaintiff complained of "continuous" nightmares, anxiety, insomnia, vertigo, and headaches. Id. It was noted that although Plaintiff appeared anxious,

he was alert and oriented, and he retained judgment, insight, and coherent thought processes. Id. His GAF score remained 55, which again is consistent with moderate symptoms or difficulty in social functioning. Finally, at this time Plaintiff was diagnosed with "probable underlying depression." Id.

Plaintiff continued to seek medical treatment from February 2002 until June 2003.[3] Like the data from the insured period, this evidence can be summarized briefly. Plaintiff received frequent treatment at various Veterans Administration and other health care facilities throughout this time, but his medical care was primarily for numerous physical problems--such as headaches and chest pain--rather than for psychological problems. R. 251-417, 418-52. However, Plaintiff's complaints of depression and anger did continue, and he continued to receive GAF scores of 55. See R. 253. Also of note, in March 2002, although Plaintiff continued to allege that he was depressed and having trouble sleeping due to disturbing dreams, he failed to show up for his scheduled psychiatric evaluation. R. 383.

Finally, in November 2002, Dr. John Glenn, who treated Plaintiff "monthly" from July until October 2002, filled out a questionnaire regarding Plaintiff, wherein he opined that Plaintiff had various physical problems and that he suffered from depression and anxiety dating back to 1996. R. 411-17. The ALJ, while stating that he was "constrained to use the medical evidence of record in the relevant period only," explicitly discredited Dr. Glenn's opinion as too conclusory and rendered too long after the last insured date to be of probative value. R. 23-24. The ALJ also noted that Dr. Glenn's opinion seemed more a recitation of

---

[3]Upon his appeal to the AC, Plaintiff submitted medical records dating between February 2002 and June 2003 to the AC. R. 418-452.

Plaintiff's self-reported problems than a report of his own clinical findings or observations.

Id.

In sum, nearly all of the data regarding Plaintiff's mental health either predates or postdates the insured period.[4] According to the Commissioner, Plaintiff's "heavy reliance"

---

[4]Although not otherwise discussed herein, the Court points out that it is aware of the fact that a second "Psychiatric Review Technique Form" ("PTRF") was completed in March 2002. See R. 272-84. Unfortunately, this entire form is virtually blank, except for the last page, upon which the non-examining Agency consultant stated as follows:

> [Plaintiff's] [f]ile suggests a history of emotional, cognitive, and substance abuse issues, but info[rmation] in the file is not sufficient to fully assess [Plaintiff's mental condition] for [the] period in question or to rate [his condition] as of DLI [Date Last Insured].

R. 284. In summary, the Agency physician opined that, due to insufficient evidence, no disabling condition was established. Id. at 272, 284.

Ordinarily, the ALJ's failure to procure a properly completed PTRF and consider it in his opinion would be an occasion of some concern. See Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005). That having been said, the Court is not persuaded that the failure to procure a completed PTRF in this case constitutes error necessitating remand. First, the PTRF requirement is only triggered by the existence of a "colorable claim of mental impairment." Id. at 1214. Here, the ALJ concluded that no severe mental impairment existed. If that decision is supported by substantial evidence, then a PTRF would not have been helpful. Also, Plaintiff has not argued before this Court that the PTRF was deficient, and by not making this argument, Plaintiff has waived any defect regarding the PTRF. See Callahan v. Barnhart, 196 F. Supp.2d 1219, 1230 n.5 (M.D. Fla. 2002).

More importantly, the PTRF could not be completed because of the paucity of medical evidence regarding the relevant period. Although the ALJ has a duty to develop the record, the lack of sufficient evidence in this case stems solely from the fact that Plaintiff did not seek psychiatric treatment during the bulk of the insured period. Plaintiff, not the Commissioner, bears the burden of producing medical evidence of severe impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987). Simply put, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Id. at 146 n.5. The absence of evidence in the record showing mental impairment during the insured period is not due to any fault of the ALJ, and absent any showing that additional evidence was needed to render a decision based upon substantial evidence, the Court will not penalize the Commissioner for Plaintiff's failure to produce relevant evidence. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the

on this evidence, especially data from prior to 1997, is fatal. Com'r's Br., p. 7. For the

following reasons, the Court agrees.

### a.  Pre-1997 Evidence: Barred by *Res Judicata*

Importantly, the ALJ specifically declined to consider whether Plaintiff was disabled

before January 17, 1997, the date of a prior administrative decision unfavorable to Plaintiff.

R. 21. Upon reaching this conclusion, the ALJ consequently refused to consider evidence

rendered before January 17, 1997. The ALJ reasoned as follows:

> A determination of the Commissioner that has become final and
> binding may only be reopened under very specific circumstances. In the
> instant case, there is no new medical evidence describing claimant's
> condition on or before the date of the prior final determination . . . sufficient
> to justify reopening this prior final decision . . .Therefore, the application on
> which the prior determination was based is not reopened. Furthermore, the
> doctrine of *res judicata* is applicable in that a previous determination has
> been made on clamaint's rights on the same facts and on the same issues . .
> . [T]he undersigned concludes that claimant's entitlement to a period of
> disability and [DIB] on and prior to January 17, 1997 is precluded by . . . *res
> judicata*. Therefore, the only period that will be considered . . . will be the
> period beginning after January 17, 1997, and extending through the date the
> claimant is last insured for [DIB].

Id. After noting that Plaintiff's last insured date for DIB was December 31, 2001, the ALJ

went on to exclude evidence dated outside the period between January 17, 1997 and

December 31, 2001 from substantive consideration. Id. at 21, 23.

Instead, the ALJ focused his attention exclusively on the evidence (or, perhaps better,

the lack thereof) dating from the relevant period, and relied upon the paucity of medical

---

claimant bears the burden of proving that he is disabled, and, consequently, he is responsible
for producing evidence in support of his claim." (citations and quotations omitted)).

evidence from that time frame to trivialize Plaintiff's claims regarding his mental health. See R. 22-23. It is this "self-imposed limitation" to which Plaintiff objects. Pl.'s Br., p. 9. In response, the Commissioner argues that the pre-1997 and post-2001 data is irrelevant because it does not "form a basis for indicating Plaintiff's current medical condition at the time relative to his present claim." Com'r's Br., pp. 1-2 n.1. In assessing this question, the Court first notes a few general principles.

To begin, it should be recognized that the Court does not have jurisdiction to review the ALJ's refusal to reconsider the prior administrative determination because such was not a "final decision." See Cash v. Barnhart, 327 F.3d 1252, 1256 (11th Cir. 2003)(*per curiam*)(citing Califano v. Sanders, 430 U.S. 99, 107-09 (1977)). Simply put, when the Commissioner relies upon *res judicata* to refuse to re-examine a prior claim, that decision is beyond the purview of the district court. Cash, 327 F.3d at 1256-57. Moreover, contrary to Plaintiff's position, *res judicata* also entitles the ALJ to decline to consider evidence predating the prior binding decision. See Wyatt v. Secretary of Heath & Human Services, 974 F.2d 680, 687 (6th Cir. 1992)(ALJ, relying upon *res judicata*, may refuse to accept evidence from prior administrative proceeding); Robbins v. Secretary of Health & Human Services, 985 F.2d 1223, 1224 (8th Cir. 1990)(*per curiam*)(*res judicata* bars reevaluation of medical evidence from prior period); Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985)(evidence predating prior administrative decision barred by *res judicata* and "irrelevant"). Indeed, the prior unfavorable administrative decision generates the presumption that the Plaintiff was not disabled even *after* the date of the prior decision. Miller, 770 F.2d at 848.

13

Of course, evidence predating the insured period should be considered in one exceptional situation: when the predated evidence is meant to "serve as a background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." Robbins, 985 F.2d at 1224; see also Bladow v. Apfel, 205 F.3d 356, 361 n.7 (8th Cir. 2000)(same); cf. Groves v. Apfel, 148 F.3d 809, 810-811(7th Cir. 1998)(explaining that evidence predating the relevant period is not barred by *res judicata* when it is used to "reinforce or illuminate or fill gaps in the evidence developed for the second proceeding"). Thus, the ALJ does not err when he considers the "underlying medical facts" of a worsening condition which were originally developed in a prior proceeding. Gross v. Schweiker, 577 F. Supp. 887, 889 (M.D. Ga. 1984).

However, Plaintiff does not argue that his condition changed or deteriorated between January 17, 1997 and December 31, 2001; rather, he argues that the pre-1997 evidence is probative of his "on-going, unabated mental illness since 1995." Unfortunately, Plaintiff is collaterally estopped from making this argument. Functionally, Plaintiff argues that the ALJ should have reconsidered the pre-1997 evidence and concluded that Plaintiff was disabled *before and during* the insured period. However, once the ALJ found it improper to reopen the prior claim, *res judicata* precluded him from engaging in this type of reconsideration. Simply put, Plaintiff's logic would eviscerate the doctrine of administrative *res judicata* and strip the prior determination of any finality or binding effect.

Moreover, the Court notes that Plaintiff's argument is, at the very least, counterintuitive. While Plaintiff was hospitalized in 1995 and received psychological treatment afterwards, he apparently did not seek psychiatric care of any kind from 1997 until

the fall of 2001--such does not suggest "on-going unabated mental illness since 1995" which would make the pre-1997 evidence indicative of Plaintiff's condition during the insured period. If anything, the paucity of evidence during the relevant period indicates that Plaintiff's condition had improved during that time, not that he had a serious "unabated" or progressively deteriorating mental illness. In sum, there is no reason to suppose that evidence predating the relevant period by up to two years had any great probative value in determining Plaintiff's condition during the insured period.

### b. Post-2001 Evidence: Properly Rejected as Lacking Probative Value

Likewise, the ALJ properly declined to entertain the evidence postdating the insured period. First, the Court recognizes that the evidence from late 2001 (the waning months of the insured period) and onward, as discussed above, perhaps suggests that Plaintiff's condition deteriorated at this time. The ALJ recognized this. See R. 24. However, evidence relating to a later-acquired disability or a deterioration in the claimant's condition is immaterial and properly excluded from consideration unless it relates chiefly to the claimant's condition *after* the expiration of insured status.[5]

More generally, evidence postdating the insured period which does not purport to

---

[5]To illustrate, in the analogous situation in which the disability claimant urges the district court to remand (pursuant to sentence six of 42 U.S.C. § 405(g)) based upon evidence which postdates the ALJ's decision, the Court will not remand unless the new evidence is material and relates to the claimant's condition during the relevant period. See Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001)(evidence related to subsequent deterioration of the claimant's condition is immaterial unless it relates to relevant period);see also Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988); Caulder v. Bowen, 791 F.2d 872, 877-78 (11th Cir. 1986). Likewise, the ALJ does not act improperly by refusing to consider evidence before him which does not relate to the pertinent time frame.

describe the claimant's condition retroactively is properly rejected as "minimally probative." See Siterlet v. Secretary of Health & Human Services, 823, 918, 920 (6th Cir. 1987)(*per curiam*)(finding medical report dated "eight months after expiration of insured status" to be "minimally probative"); see also Rivera-Figueroa v. Secretary of Health & Human Services, 858 F.2d 48, 51 (1st Cir. 1988)(declining to discuss medical reports postdating expiration of insured status). Thus, the ALJ properly refused to consider the post-2001 evidence, excepting Dr. Glenn's retrospective report, which the ALJ explicitly rejected with ample justification. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)(treating physician's opinion properly discounted if unsupported by objective medical evidence or merely conclusory); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991)(same). In addition, the Court notes that the evidence from February 2002 through June 2003, which was submitted to the AC and therefore never before the ALJ, is not properly considered in this Court's substantial evidence determination. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998); Keeton v. Department of Health and Human Servs., 21 F.3d 1064, 1068 (11th Cir. 1994). Therefore, the key issue becomes whether the evidence from late 2001 renders the ALJ's opinion unreasonable.

### 3. The ALJ's Determination that Plaintiff Did Not Have a "Severe" Mental Impairment is Supported by Substantial Evidence.

After reasonably limiting his primary consideration to the evidence within the relevant period, the ALJ relied upon the paucity of evidence from that period to conclude that Plaintiff did not have a severe mental impairment. Given the mild and *de minimis* nature of the showing needed to demonstrate a severe impairment, this question is admittedly a close one. Nevertheless, the Court concludes that the ALJ's opinion is based on substantial

evidence and should not be set aside. There are two reasons for this disposition. First, the medical evidence is susceptible to the ALJ's interpretation. Second, the ALJ also reasonably concluded that, to the extent Plaintiff has a mental impairment, that impairment is related to Plaintiff's alcohol abuse.

Contrary to Plaintiff's assertion, the evidence from the relevant period supports the ALJ's conclusion that Plaintiff did not have a severe impairment during the insured period. Rather, after years without seeking psychiatric help of any kind, Plaintiff began complaining of nightmares in October 2001. Moreover, as discussed *supra*, even after Plaintiff began seeking treatment, his doctors continued to opine that Plaintiff's judgment, memory, insight, and thought processes remained intact through the end of 2001. His doctors also described him as pleasant and cooperative during this time. The ALJ explicitly relied on these observations to conclude that Plaintiff's mental impairment did not significantly affect his judgment, ability to follow instructions, or any other social skill needed to carry out basic work activities. R. 22.

This determination, while not compelled by the evidence, was a reasonable one. Plaintiff puts great stock in his GAF scores of 55 from late 2001; however, the Court is not persuaded that these scores dictated a finding of severe impairment. Pl.'s Br., p. 11. First, a GAF score of 55 alone does not oblige the ALJ to find a severe impairment. See Henson v. Barnhart, 373 F. Supp.2d 674, 681-83 (E.D. Tex. 2005)(diagnosis of "major depression" and GAF score of 50 did not preclude ALJ from finding no severe impairment); Deford v. Barnhart, 347 F. Supp.2d 1174, 1180-81 (M.D. Ala. 2004)(GAF of 50 not suggestive of severe mental impairment). Next, although the GAF scores are consistent with some

17

impairment, the medical records from the period, discussed above, also support the ALJ's conclusion. In addition, the ALJ may rely upon the claimant's infrequency of treatment and failure to follow prescribed treatments to conclude that no severe impairment exists. Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004). Here, the ALJ properly noted that Plaintiff did not begin seeking treatment until near the end of the insured period, and that when he did seek treatment, he failed to take the medications prescribed for him. R. 22. Simply put, the evidence is susceptible to the ALJ's interpretation, and the Court cannot substitute its own judgment for that of the ALJ.

Moreover, although Plaintiff takes umbrage with the ALJ's conclusion, the ALJ also reasonably determined that any mental impairment was "alcohol-related" and that Plaintiff's testimony that he no longer drank was "not credible and not supported by the medical evidence of record." R. 24; see also R. 467-71. There is abundant evidence of Plaintiff's alcohol abuse dating from before, during, and after the insured period. Assuming *arguendo* that Plaintiff's mental impairments during the insured period were severe or even disabling, it is Plaintiff's burden to demonstrate that his alcohol abuse was not a contributing factor material to the disability determination. Doughty v. Apfel, 245 F.3d 1274, 1278-81 (11th Cir. 2001). In this regard, the ALJ reasonably relied upon the medical evidence and Plaintiff's daily activities to conclude that any mental impairment was related to Plaintiff's alcoholism, and Plaintiff has furnished no contrary evidence.

**B.    The ALJ Properly Considered Plaintiff's Daily Activities.**

Of course, Plaintiff also argues that the ALJ misconstrued his "minimal" activities of daily living as inconsistent with his allegations of disability. Pl.'s Br., p. 13. Plaintiff

correctly states the law in this Circuit that activities of short duration, such as housework or fishing, do not automatically "disqualify a claimant from disability." Id. (citing Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997)). However, in this case the ALJ properly relied upon Plaintiff's activities to undercut his subjective claims regarding the severity of a panoply of alleged mental and physical problems. See R. 23-24.

Specifically, the ALJ noted that during the insured period Plaintiff, *inter alia*: 1) had a "very deep, ruddy tan," suggesting that he spent a great deal of time outdoors, 2) launched his own boat (a sixteen-foot Carolina Skiff) when he wanted to go fishing, 3) took his trash to the dump himself, 4) did some household chores, 5) socialized with friends, and 6) managed his own finances. R. 23-24. The ALJ found this inconsistent with Plaintiff's allegations of incapacitating pain and mental impairment. Although Plaintiff nitpicks minor factual inaccuracies in the ALJ's opinion which need not be addressed explicitly, the ALJ's summary of Plaintiff's activities is basically accurate, and his conclusions drawn therefrom were reasonable. Plaintiff's activities during the insured period are consistent with an active, outdoor lifestyle, rather than the total disability alleged by Plaintiff.

Contrary to Plaintiff's view, the ALJ did not rely upon Plaintiff's activities alone as precluding his claims of disability, but simply took those activities into account as part of his sequential analysis based on the relevant record evidence. Lewis, mistakenly relied upon by Plaintiff, does not stand for the notion that a claimant's self-described activities are irrelevant or unimportant in assessing disability, but rather for the principle of law that the ALJ may not cite minimal daily activities as a pretext for disregarding evidence contrary to his decision, such as the opinions of treating physicians. See, e.g., Phillips v. Barnhart, 357 F.3d

19

1232, 1240-41 (11th Cir. 2004). A claimant's daily activities are properly considered by the ALJ in assessing the claimant's credibility and assigning weight to medical opinions. See, e.g., Moore v. Barnhart, 405 F.3d 1208, 1212-13 (11th Cir. 2005). In sum, the ALJ's opinion is supported by substantial evidence and should not be disturbed.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this _19th_ day of August, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

Kenneth C. Etheridge, Esq.
Kevin W. Hall, Esq.

CASE NO:    CV304-039

DATE SERVED:  August 19, 2005

SERVED BY:    Cindy Reynolds

☐    Copy placed in Minutes

☐    Copy given to Judge

☑    Copy given to Magistrate